Good morning. May it please the court. There are fact issues based on Applee's own summary judgment evidence that precludes summary judgment plus the record taken as a whole presents even more fact issues requiring reversal and remand. For example, looking only at Applee's evidence for the moment, Applee introduced fact issues as to whether decedent Saul Guzman was a smoker. The medical records obtained by Applee prior to issuance of the policy state that decedent was a non-smoker and had never smoked. That's on record on appeal page 205, which those are the blue numbers at the top of the page. I know there's red numbers at the bottom, but I did the blue ones at the top because I could find them better. And that's on ROA page 205, also 581 and 469. Applee provided deposition testimony of decedent's wife, that's the appellant in this case, it was proffered by Applee, in which she stated that she was very surprised that the medical records showed that he was a smoker. She stated that decedent had never smoked. She never smelled it on him and never saw him smoke. That's ROA page 182. Applee submitted deposition testimony of appellant to the effect where she stated that decedent's entire family was astonished that medical records indicated that he was a smoker. That's ROA page 183. Applee produced urinalysis that was performed prior to issuance of the policy that showed no nicotine present. That's ROA page 190. There is a hospital record showing a history of no tobacco submitted by Applee. That's ROA page 277. So the big fact issue is whether or not he was a smoker. That's not the only issue, but that is the largest issue. Okay, do we need to get into the RC point about whether or not there's a misrepresentation? I think this is a very interesting point, but if there's a fact issue as to whether he was a smoker at all, then it doesn't matter whether there's a misrepresentation about it, right? If it is found as a matter, the court found basically that the trial court found that he was a smoker as a matter of law, and if that is true, then there was a misrepresentation. And then we need to go into whether or not you have to prove a willingness in the misrepresentation. Well, the misrepresentation has to have been material, and I do think that there are fact issues, and there is a possible scenario where that is a fact issue. Of whether it's material or not? Yes, because of the conflicting evidence that is in the record on the part of the Applee, and then also the additional evidence submitted by the appellant, Your Honor, because it's conflicting. But didn't the North State put in evidence that they would not have issued the policy on the smoker, right, if they'd known he was a smoker? Yes, Your Honor, but that is a presumption that's not founded on the basis of the record in this clearly conflicting. But what I want to point out to the court is not only is the record inconsistent, but it's not inconsistent solely based on appellant's evidence. It is inconsistent based on Applee's own evidence. For example, Applee's own evidence is inconsistent on whether or not he was a smoker. On page 469, it shows that there's evidence that the decedent was a nonsmoker. On page 470, that he was an occasional smoker, and on page 470 also that he was a former smoker and then perhaps a smoker. Interestingly, at decedent's death or shortly before his death, his last illness that took him to the hospital and from which he died, the records report in the same records, hospital records from that visit which resulted in his death, those records report both that he never smoked, that's page 589, and that he smoked every day. That's page 591. Well, those are very inconsistent records and that kind of highlights the fact that this is a factual dispute that requires reversal and remand for the trier of fact and is not an appropriate summary judgment motion. That's the same set of records. That's the same hospital visit that he was both never a smoker and that he was a current everyday smoker. Those two things just absolutely can't fit together, but they're in the same record. So, we've got some inconsistencies in the record that create a fact issue. Okay, back to this intent to deceive. Okay, so if you, assuming that you win on that there's a fact issue on whether he was or was not a smoker, we don't have to get into whether there was an intent to deceive or whether that's a part of the elements, but if the appellee wins that we would have to get into that issue, wouldn't we? And so then the question then is should we certify that question because it's an intermediate Texas Court of Appeals and it's two or three opinions in our district courts. They're at odds and sometimes we get out ahead of the Texas Supreme Court and that's not always a good thing. Your Honor, I think that you raise an excellent and interesting point on the intent to deceive. I have that it was not in fairness, just so the court aware, I was not involved prior to my appearing before the court today. My dad actually was counsel for the plaintiff and he passed away, so I'm here. He passed away in the middle of the case. I'm sorry. Well, thank you. Practiced law for more than 65 years. Talked about this case the day he died, but in any event, in fairness, the issue of intent to deceive was not briefed before this court by the appellant. It was brought up in the amicus brief by Arce or Arck, not sure how you pronounce that. That having been said, I have read the briefs on both sides, amicus and opposing. I do think that it is an excellent issue to be certified because I think the issue raised by Arce is an excellent issue and that is whether or not the codification of the insurance code changed the law and there is now not been resolved at the Texas Supreme Court level and it would present a problem for this court to rule in favor of appellee on that issue and say the intent to deceive is not an issue and that's been abrogated or overruled or rewritten and then have different results in state court because then you have a really big issue of shopping. Well, in your brief, you affirmatively stated that intent to deceive was not a required element. I confess that is so, Your Honor. I think our law is pretty clear that we don't allow an amicus to raise new issues that are not before us. And I think that that is likely true, Your Honor. I'm not arguing that. The brief, the appellant's brief clearly does not raise that issue. That is an issue that is raised only in the amicus brief. So you don't oppose that but you don't think it's necessary because you think you win on that there's just fact issues all over the place as to whether or not even among the medical records as to whether he was a smoker. Exactly. Okay. Exactly. What do you say to the district court's statement that you could explain your affidavits about the fact that he was really good at hiding the fact that he smoked? Excellent question. And here is my response. Appley obviously has concluded that an inference should be drawn from the appellant's affidavits, the one that was provided by the surviving spouse and also by the decedent's sister, to the extent that they never saw him smoke. They denied that he was a smoker. They never smelled it on him. And similar type evidence. What Appley has done is come back and said there is an inescapable inference that needs to be drawn from that. And that is that they just weren't around him and he snuck around and did it behind their back. However, that's not the law of summary judgment. If there is sufficient evidence from which an inference can be drawn, it is very clear in this circuit and at the United States Supreme Court and also in Rule 56 that any reasonable inferences must be drawn in favor of the non-movement. And what they have done and what the trial court erred in doing was drawing an inference in favor of the movement. And I think that was done for two reasons. One of which is there was an allegation made that there was no corroboration of the evidence supplied in the affidavits by appellant and by the decedent's sister. But also that there was the evidence was so was either conclusory or so weak as to be that it should be disregarded. Yet they want an inference to be drawn from that that says he just snuck around. And that is clearly an inference because there's nothing in the record that says that one way or the other. That's just an inference that they have requested to be drawn from that. But if you, if the evidence is strong enough to draw an inference, then the inference must be that he was not a smoker. That that's a fact issue on whether he was a smoker or not because he never stank. And it's common knowledge that if you're a smoker, sorry, you smell bad. You stink. You smell like your hands. It gets in your skin. It's on your clothes. It's in your car. It's in your hair. And the evidence is that he never smelled like that. And if you're going to draw an inference, let's be real about it. Nobody's that good at sneaking around. And you're going to get caught at one time or another. So that's not even a reasonable inference to draw. But regardless, the inference that must be drawn from that is to raise a fact issue that the decedent was not, in fact, a smoker. Additionally, Appley's evidence fails to connect the dots on whether the smoking comments in the medical records were actually provided by the decedent himself. There is no medical staff affidavit. And there is a presumption that was made by Appley that it was the decedent and only the decedent that provided the content. But there's no summary judgment record support for that presumption being made. And that presumption has also been made in the face Appley's own evidence that they submitted, that appellant stated that the medical records contained mistakes. And that's at page 616 of the record. And under those circumstances, an inference, it's really an inference, not a presumption, but there should not be an inference that the decedent provided the content for whether he smoked or didn't smoke in those records. And I cite to, it's not in the briefing. I just happened to find this case. And it is SBA v. Boulu, B-E-A-U-L-I-E-W or U, I can't read my writing. It's a Fifth Circuit case. It's case number 02-31093. It's a 2003 case. And in that particular case, the court reversed a summary judgment and said that a CFO could not be impugned with knowledge that alone had been subordinated just simply because of her position as a CFO, that there had to, there was no, there were no board minutes, there were no board meeting, there was no evidence that she had actual knowledge. That's on page 6 of that opinion. And so therefore, it was reversed. And I would posit that we have the same sort of fact scenario here. Thank you, Ms. Wolfram. You've reserved time for rebuttal. Thank you. Mr. Donahue. Thank you, Your Honor. May it please the Court. David Donahue for Apple Leaf. I'd like to start, if I could, by addressing some of the factual points that Ms. Wolfram made with regard to all state's evidence. The first thing that she had referred to was a record that stated that Mr. Guzman was a non-smoker, and it was contained at page 205 of the record. In further explanation, that was a document, it was a record that Allstate had requested during the initial underwriting process, and what it received was a summary of this particular medical provider's records that actually did indicate that there was no smoking history. And that's what prompted the company to issue it, the policy the way it did, in conjunction with the statements in the application. But when the records were requested as part of the contestable investigation, they received the actual records, not a summary, from this particular provider, which contained all of the references that had occurred in the months, the 16-month period prior to the application, that he was a current smoker. And so... So let me understand, the records you received before the policy was issued did or did not indicate he was a smoker? They did not indicate he was a smoker. There was no information that he was a smoker? I can't remember. I think that it was non-smoker was indicated, but it turns out that what we had received at that point was a summary of the actual records. And when you get the actual, you know, visit notes and things like that, that's where you see all this history of smoking that we cite in our brief. Is there a record from his last time in the hospital that says he was a non-smoker? Your Honor, the record from the last time he was in the hospital indicates that he was a current everyday smoker. And did it also say in the same record that he was a non-smoker? That's what the opposing counsel said to us just 10 minutes ago. Now, honestly, I don't remember if that particular record had a conflict in it, but certainly there were records between the time when the policy was issued and this last visit where they were consistently showing that Mr. Guzman was a smoker. Are there any records that have a conflict in them? Any medical records that say that he was not a smoker since you're relying on the medical records to beat the affidavits from the family members? The two records that come to mind is the one that you mentioned, which is post issuance. So post issuance there is a medical record that says he is a non-smoker? Right, among the records that also indicate that. Is there another one? Well, there's a record that indicates that he is a former smoker. So that would be a non-smoker also? Well, but it would also... It would contradict someone's statement that he never smoked, but it would also be a non-smoker for purposes of your policy? Well, not necessarily, Your Honor. One, there's two questions on the application that he had to answer. One, are you a current is no. Have you ever been a smoker? And he answered no to that. Okay, so the records and the medical records say that he was a smoker, and there are more of those, that he never smoked, and that he formerly smoked. So how, if that's the medical records universe, how can you get summary judgment on the medical records? Your Honor, there's nothing that would indicate that this is not... I mean, if it was one provider that we were talking about versus that had a conflict in their own records versus the affidavit statements. We're talking about four, five, six, if you count post-issuance records that all consistently report the same thing. That's not the way summary judgment works. I mean, summary judgment doesn't work where you get to say, well, we have five and they've got two, so therefore we win. That might work in front of a jury. Well, you do have to weigh what is the that a reasonable juror could find in favor of the non-movement, then summary judgment is appropriate. Your first answer, when you first started your presentation about the underwriting process, I take it that all state, like all insurance companies, you don't just take the answers to the application from the insured. As gospel truth, you do this investigation and you get access to these other medical records during underwriting. Well, it's kind of a sliding scale in terms of depending on the amount of the insurance, the age of the applicant, the older the applicant and the more insurance is requested, the less likely they are to just rely on the application. Could you have gotten the medical records that you're now relying on during underwriting? Certainly. You could always have requested additional records, but that's not really the standard in Texas. I mean, the standard is that the insurance company has the right to rely on the truth of the assertions or the representations in the application and just because they seek some sort of additional information doesn't mean that they have waived their reliance on the truth of the answers. And so the remedy when you determine that the policy shouldn't have been issued at the time, is to refund the premiums. Correct. And does that come from the insurance code or is that part of the contract? That's what the agreement says. It's both. So, does the insurance code say anything about why the remedy wouldn't be to actually send in a bill for the delta in the premiums? Yeah, I understand what you're saying. The code doesn't address that at all. Typically, there is one exception to that, which is if there was a misstatement of age. There is a statutory provision and also there's a provision in the policy that says at that point we would true up the premiums charged and then pay the excess. But that does not apply to situations where the result would have been we would have issued the policy at a higher premium. Right, but you would have issued, there's no dispute, I don't take it from the record, you would have issued it at $650 or whatever. Yeah, I think it was more than twice the premium for the smoker versus the non-smoker rate. And certainly that is not unique to Texas. I mean, if the policy is material and it affects the risk in the sense that it would have been a rated policy all the way up to we wouldn't have issued at all, then the rescission is proper. I don't see in the order by the magistrate judge, and was this a case that y'all consented? Yes. Okay. I don't see in the order by the magistrate judge that she grappled with the dueling or the whatever, you have three, the varying medical records. I don't see specifically her addressing that. Am I wrong? I think that's accurate, Your Honor. I think the, as I recall, the analysis was more the medical records that, as characterized by her, were overwhelming in their consistency, I guess, versus the affidavits. And then she only deals with the affidavits and then she says, oh well, the affidavits must be false, that he must have been lying. So which is kind of an interesting conclusion to reach. But she doesn't grapple with this issue in fairness to her or to the magistrate judge. Well, in terms of the records that would have shown that have information that says he was a nonsmoker, that piece of it? Is that what you're talking about? Yeah, I don't think, you're right, I don't think that that's something that she analyzed in writing there. Certainly, though, I do think that she did apply the standard there to the affidavit of putting it in the best possible light and just found that the, even if you took the evidence piece of that at face value, it doesn't directly address the she wasn't aware that he was a smoker. Counsel, do we send this, if we were to send it back, because there's a fact issue on that issue, question, do we also send back the DTPA and insurance code claims, the whole thing? Yes, Your Honor, I think that if... I'm not foreshadowing, I'm just asking if it's a package deal. Well, as I recall, our grounds for dismissing the DTPA grounds were that, you know, if in Texas, if you weren't entitled to contract damages, then you weren't entitled to these extra contractual damages as well. So my understanding is that all of this would be live again. Do you want to address the RC point or not really? Well, pardon me, not really. But honestly, I think Judge Davis made a great point. And that is, you know, under the pretty clear and consistent Fifth Law, Fifth Circuit precedent, when you have these, when you have an issue that was waived by the parties and then introduced by an amicus brief, then absent some sort of extraordinary circumstance, then the Fifth Circuit has traditionally declined to address that. And I think that there's, nobody's raised any extraordinary circumstances here. And there's none that have been argued. And the only instance that I could actually confine in the Fifth Circuit, where an extraordinary circumstance was created, was when an issue related to subject matter jurisdiction was introduced by an amicus. It's interesting because the, I've read, we have two different lines of cases, and I wonder if you would agree with me that it boils down to the distinction between issues and arguments. So we have a line of cases, as Judge Davis pointed out, and I heard you agree with, that says, well, if the amicus brings up an issue that is a ground for relief that is different from the ones that parties do, then we obviously don't do those unless the issue or the ground for relief is jurisdictional. But I don't take it that that's what R.C., or however we're going to pronounce the amicus, did here. They're just saying, y'all got the law wrong. And we have a whole nother line of cases that goes a long way back that says, whatever these two parties might think about the law, you can't waive it, you can't misassert it, because we have to apply it to get to the right judgment. And so if the question is whether this is a particular element of the claim that is separating the parties here, then it strikes me that the whole line of cases about amici and injecting new issues or different grounds for relief just doesn't apply. You know, I'd actually considered that, obviously, when this issue comes up. And it also seems to sort of, you know, conflict with the idea of not, you know, reaching questions that don't necessarily need to be reached. We need to reach the question of misrepresentation for purposes of rescinding the insurance contract. Absolutely. And so we have to make an eerie guess about what Texas law says, the elements of that are. I'm not aware of a case that says that we are somehow bound to what the two of you think the elements are of a misrepresentation claim. I mean, we need to take the arguments and listen to them very seriously. But at the end of the day, we have to figure out what Texas law says. And we have all kinds of cases where we end up, you know, not agreeing with one side or the other. We come up with some middle principle. And so I'm not sure I understand how this is different. Well, certainly, in all candor, it may not be different. And if the court is inclined to consider these issues and make this type of eerie guess, I think that the district court decisions, including the one made in this case, are much closer to how I think the Texas Supreme Court would decide this issue today than than this RC case in the Court of Appeals. One sort of related point to that, you had mentioned something about a certification to the Supreme Court. And actually, yesterday, the Supreme Court had granted the insurance company's petition for an extension of time to file a petition to, for the Texas Supreme Court to hear that. So that case may not be, that case may be heading to the Texas Supreme Court anyway. I don't know if that has much influence, you know, on your decision here. Obviously, there are other issues that you have to decide. But certainly, the question that, you know, seems to be and the trend seems to be as this, you know, 40 years since the Mays test or the common law elements were announced by the Supreme Court, that it's certainly much more of a willingness to look at the plain language of the statute first and foremost. And before doing anything else, determine by the plain language what the legislative intent was. And if that happens, which I don't think is something that the intermediate appellate court did, it's very hard to reconcile the plain language of that statute, which clearly does not impose an intent to deceive on Section 705051, which applies to this case. It's very hard to reconcile that plain language with the idea of adding an additional common law element to that. It's something that obviously happened over a period of time, but I think there's more of a trend now certainly to first and foremost look at this plain language. And if you do that, you just come to the inescapable conclusion. I think that the legislature intended to have this element on certain pieces of, in certain situations, and they purposely did not include it in other parts of it, including the one that applies to this case. Do you have anything else? I don't, if there's no questions. Well, thank you. We have your argument, Mr. Donahue. Ms. Wolfram, do you have anything? Well, let me ask you something first. I don't remember seeing in your brief where you made any reference to the conflict in the medical records. Did I miss it, or is it in there? It is not in there to the same extent that I have argued it here this morning. I do believe that the error has been preserved because the first issue, of course, is that the summary judgment, but there, but the, it was briefed and argued that the evidence of the appellee was not sufficient to grant the summary judgment, so I believe it was preserved in both of those ways. And then there was also a specific argument that I've mentioned already, and that is that the dots are not connected to show that the statements that are in the medical records, that he was a smoker, were actually made by the decedent, and that was . . . When I read your brief, I thought this case was, we had these four or five medical records, and then opposed to that were the two affidavits. I thought that was what the record was, and so the judge was faced with pretty powerful evidence that he was a smoker. I mean, assuming that this information had to come from him, and so then the judge said, well, how can I explain this? And he said, well, maybe he's really good at hiding his smoking. Well, and I appreciate that line of thinking. That's certainly where the magistrate court went, but I don't believe that that's what the law allows because one, there was an assumption made by the magistrate that there was no conflicting evidence in the appellee's own evidence, and that was one of the bases upon which she dismissed out of hand the affidavits and the evidence that was submitted by the appellant. It's like, well, you don't have any corroboration. It's conclusory, and so she dismissed out of hand the appellant's evidence, but in reality, you have to look at all the evidence in the case, and Rule 56 also states that you can look at evidence that's not specifically pointed out by record reference, and so I believe . . . Well, it's the way of the law that the judge doesn't have to scour the record to find evidence. That is absolutely true. There's case law that says that, but Rule 56 also specifically provides that the judge can do that, and it's pretty in the summary judgment record by the appellee. The affidavit that was submitted by the all-state representative states on its face fact issues because the original investigation that included not just the application made by the decedent, but also obtaining records from decedent's primary health care provider that said he was not a smoker, and then the records that they got back and that are in the affidavit of the representative say he wasn't a smoker, then yes, he was a smoker, then he was a former smoker, then he's back being a smoker again, and then the medical records that they compiled and they brought in are conflicting again, that's what she based her affidavit on, that all of it's conflicting, and that's on the face of the record, and I do think that the appellate points are broad enough to cover this and they're pretty glaring, and so there is a fact issue involved here, and to the issue of the question that was raised earlier with other counsel, is this a package deal if the court reverses this and sends it back, yes, absolutely, it's a package deal, and the issues of DTPA and breach contract or anything else that was raised in plaintiff's petition, appellant's petition, those were dismissed because if he was a smoker, then they fall away. If there is a fact issue on whether he's a smoker, there's a fact issue on whether it's material, then those things are all revived because they really were not considered just the, well, those are gone, so if it's reversed, then everything's back live again, and I would also, if there is a fact issue on smoking, then there is ipso facto fact issue on every other element that's required to be proved. Thank you. We have your argument. This case is submitted. Thank you. We stand in recess until tomorrow.